The Chief Justice
delivered the opinion of the Court:
This cause was appealed from the special term of the equity court.
The bill avers that on the 19th of July, 1888, the com *613 plainant and the defendant Gwynn, for the accommodation only of the said defendant Murray, endorsed for his benefit a promissory note drawn by Murray to the order of complainant, the same being for $300, payable at three months after date, with interest, payable at the Central National Bank; and upon said endorsements said Murray procured said note to be discounted and received to his own use all the proceeds thereof; that the note was paid with a second note drawn and endorsed in the same way, the interest being paid by complainant, and upon the maturity of this second note it was taken up with another similar renewal note for a like amount, the complainant again paying the accrued interest; that the last of these notes matured February 2,' 1890, and was protested, due notice being given the endorser, and the complainant, being required by the bank to do so, paid the note with interest and costs, amounting in all to $306.60, his total payments on all the notes being. $329.85; that Murray has refused and neglected to pay complainant, and Gwynn has refused to pay half the loss; that Murray is insolvent and financially irresponsible; that complainant is advised that Murray is lawfully bound to reimburse him in said payments, but because of Murray’s inability, the complainant is entitled to have contribution, from the defendant, Gwynn, who was his co-surety in the premises.
The bill prays for the recovery of the whole amount from Murray, and from Gwynn, one-half of the entire amount which the. complainant claims he has paid by reason of his endorsement of the note.
A demurrer to .the bill was filed, which was overruled.
Thereupon, the defendant, Gwynn, in his answer says:
That about the 19th of July, 1888, defendant Murray had in the bank of William Mayse & Co. his note for $500, endorsed by complainant, Buscher, for his accommodation. This note was due or about to become due, and Murray wished to take it up, or to renew it, and Buscher also desired this. Murray had also out two notes of $50 each, endorsed by Buscher, which were about to mature, and *614 Buscher was anxious that they should be taken up. Gwynn was not a party to any of these notes. In order that these notes might be taken up it became necessary to get money in some other way than from Murray, he being then embarrassed. Thereupon, Buscher, solely for his own benefit and to relieve himself as far as possible as the endorser of said notes, offered the said Murray to get a note with a good second endorser discounted at the Central National Bank. Accordingly, Murray brought to Gwynn a note drawn by him to the order of Buscher and with the endorsement of Buscher thereon, and requested his endorsement, advising Gwynn of the purpose to which the proceeds were to be applied. Knowing Buscher to be financially responsible, Gwynn endorsed the note. He denies that he endorsed for the accommodation of Murray, and says he did it for the accommodation and benefit of Buscher only, and that he never made himself liable in any other manner than as an endorser subsequent to Buscher, who was the payee, and who always knew that the respondent was not under any circumstances to be liable to him.
The answer further declares that after the note was endorsed, Buscher took the note to the Central National Bank, where he was a depositor, and had it discounted and placed to his credit. The respondent, Gwynn, was also a depositor there. After the discount Buscher, as the respondent believes, withheld the proceeds for' several days and applied the same to his own use. In a few days he gaye the proceeds to Murray, who used the. same to take up and renew the notes aforesaid. He further says that Buscher was the active party in the procuring of said note sued upon in order to relieve himself; and that the renewals were made for the same purpose, and therefore for Buscher’s benefit, and it was right that he should pay the interest and costs; that the renewal note preceding that now in suit was brought to respondent by Buscher, who requested respondent to endorse it; just before that note became due Buscher again requested respondent to endorse for him; which he did, leav *615 ing a blank for Murray’s signature, Buscher being .payee; that Buscher procured Murray’s signature, placed his own endorsement under that of the respondent’s, and took it to the bank, where it was used to renew the loan.
He denies that he was ever co-surety with Buscher for Murray, or that he is liable in law to pay any part of the loss.
The question as to the liability of accommodation endorsers, where the payee of the note is one endorser and the note is subsequently endorsed by a party who is a stranger to the face of the note, is one that has been very much mooted, and in relation to which the decisions in the various States are not exactly in accord. But for this jurisdiction the question was conclusively settled as early as the case of McDonald vs. Magruder, in 3 Peters, 470. The opinion in that case, by Chief Justice Marshall, held that where a note made fpr the accommodation of the maker was endorsed by the payee as a matter of accommodation and was also subsequently endorsed by a stranger, the payee and the stranger who thus endorsed the note sustained the relation of first and second endorser, and were not to be regarded as joint co-sureties as a matter of law. In the same case it was said that if there were any agreement between the parties, although it did not appear upon the instrument itself, it might be the subject of an action, and would control the rights and liabilities of the parties as between themselves; that under such circumstances it might be that parties by agreement could make themselves- co-sureties. The right of contribution in such a case would, of course, obtain.
This is admitted by counsel for complainant to be the law, but it is further claimed by him that in this case the testimony shows that there was an agreement between the parties that they were to be jointly liable and were to sustain the relation of joint co-sureties.
We have examined the testimony with care. It is well enough to premise that, if it is intended to rely on a contract by implication it must be' made apparent that both *616 parties understood the contract to be as claimed; that it is not sufficient, in other words, to prove by Mr. Buscher, who was the payee and first endorser of this note, that he understood Gwynn was jointly liable with him by reason of his endorsement. It must be shown either that there was an express agreement to the effect that. Gwynn should be a co-surety, or such facts and circumstances must be shown as are sufficient to satisfy the court that both these parties at the time understood that to be the case. We do not think there is any sufficient evidence to show that Gwynn had any expectation or thought of becoming a joint co-surety with Buscher, or that he had any thought or expectation of occupying any other relation than that of second endorser. We think he endorsed upon.the credit of Buscher as well'as of Murray, the maker of the note. He testifies that he knew at the time that Murray was.not responsible and was much embarrassed, and that he would not have endorsed t'he note for him alone. This being true, the complainant has. failed to make out a case entitling him to recover of Gwynn as a co-surety.
Even if this were not so, we think it is well established by the authorities, that a surety has a complete remedy at law where he desires to recover a contribution from his co-surety. The only instance in which he would be obliged to resort to a court of equity would be where there are a number of.sureties ‘jointly liable and some one or more of them insolvent. Then, inasmuch as the action at law is for an aliquot part of the ¡entire consideration which each of the co-sureties is to pay, it becomes impossible that the party who has paid the debt can receive full indemnity by suing the solvent co-sureties at law. In such a case the surety who has paid a note may bring his action in equity.. But there is nothing of that kind in this case. It is true Murray is insolvent, but he is not a co-surety. There are only two sureties, and both are admitted to be solvent. Therefore, plainly, under the authorities, the complainant in this case, Buscher, might have brought his action at law upon an *617 agreement such as he claims in argument to he established by the evidence. It follows that a court of equity has no jurisdiction of the present action.
.The court, in special term, dismissed the bill so far as Gwynn was concerned, but entertained the bill for the purpose of granting a decree for the full amount of the debt in favor of Buscher against Murray. If we, have no jurisdiction as a court of 'equity, that decree cannot be sustained.

Our conclusion is that the. decree below shotild be reversed and the bill dismissed for want of jurisdiction. It is so o/'dered.